CLERK'S OFFICE U.S. DISTRICT. COURT
AT ROANOKE, VA
FILED

MAR 2 1 2023

LAURA A. AUSTIN, CLERK
BY: [signature]
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION**

| | | |
|---|---|---|
| **BILLY W.,** **Plaintiff** | ) | **Civil Action No. 4:21-CV-00036** |
| **v.** | ) | |
| **KILOLO KIJAKAZI, Acting Commissioner of Social Security,** | ) | **By: Michael F. Urbanski** **Chief United States District Judge** |
| **Defendant** | ) | |

**<u>ORDER</u>**

This social security disability appeal was referred to the Honorable Joel C. Hoppe, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation (R&R) on February 10, 2023, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and the Commissioner's final decision be affirmed. Plaintiff Billy W. (Billy) has filed objections to the R&R and the Commissioner has replied. As discussed more fully below, the court declines to adopt the R&R, ECF No. 22. The court **SUSTAINS** Billy's objection to the R&R, **GRANTS** Billy's motion for summary judgment, ECF No. 17, and **DENIES** the Commissioner's motion for summary judgment, ECF No. 20.

**I. Legal Standards**

**A. Objections to Magistrate Judge's Report and Recommendation**

The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil Procedure is designed to "train[ ] the attention of both the district court and the court of

appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)).[1] An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622. The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. Apr. 28, 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) and Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982)). "The district court is required to review de novo only those portions of the report to which specific objections have been made." Roach v. Gates, 417 F. App'x 313, 314 (4th Cir. 2011) (per curiam). See also Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only 'those portions of the

[1] "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b).

report or specified proposed findings or recommendations to which objection is made.'") Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012). See also Arn, 474 U.S. at 154 ("[T]he statute does not require the judge to review an issue de novo if no objections are filed. . . .")

In the absence of a specific, proper, and timely filed objection, a court reviews an R&R only for "clear error" and need not give any explanation for adopting the R&R. Carr v. Comm'r of Soc. Sec., No. 3:20-cv-00425-FDW-DSC, 2022 WL 987336, at *2 (W.D.N.C. Mar. 31, 2022) (citing Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) and Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983)). See also Laurie D. v. Saul, No. 1:20-cv-831 (RDB/TCB), 2022 WL 1093265, at *1 (E.D. Va. Apr. 11, 2022) (quoting Lee v. Saul, No. 2:18-cv-214, 2019 WL 3557876, at *1 (E.D. Va. Aug. 5, 2019)) ("In the event a plaintiff's 'objections' merely restate her prior arguments, the Court 'need only review the Report and Recommendation using a 'clear error' standard.'") Thus, in the absence of an objection, a court need "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond, 416 F.3d at 315 (quoting Fed. R. Civ. P. 72 advisory committee's note).

**B. Standard of Review of Commissioner's Decision**

Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a

de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401. However, even under this deferential standard, a court does not "'reflexively rubber-stamp an ALJ's findings.'" Arakas v. Comm'r. Soc. Sec. Admin., 983 F.3d 83, 95 (4th Cir. 2020) (quoting Lewis v. Berryhill, 858 F.3d 858, 870 (4th Cir. 2017)). "'To pass muster, ALJs must 'build an accurate and logical bridge' from the evidence to their conclusions.'" Id. (citing Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) and quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)).

## II. Discussion

Billy has alleged an onset date of August 12, 2017, and his "date last insured" (DLI) is March 31, 2018. R. 996–97. Accordingly, to qualify for benefits, he must show that he was disabled during this period.

**A. The ALJ's Determination**

The administrative law judge (ALJ) found that Billy could perform light work in accordance with 20 CFR 404.1567(b),[2] with additional limitations: He needed to be able to alternate positions every thirty minutes for one to two minutes at a time, with no loss in production; he was limited to occasional pushing and pulling and operation of foot controls with the lower extremities; no climbing of ladders, ropes, or scaffolds; occasional climbing of stairs and ramps; occasional stooping, kneeling, crouching, and crawling; occasional overhead reaching bilaterally; frequent handling and fingering with the upper extremities; and he had to avoid even moderate exposure to extreme cold, wetness, humidity, vibration, and hazards.

Billy argued to the magistrate judge that the ALJ failed to grant proper weight to the opinions of one of his treating physicians and failed to adequately explain why she granted the opinions less weight. The magistrate judge found that the ALJ properly assessed the opinions of Billy's treating physicians and that her opinion was otherwise supported by substantial evidence, and Billy objects to this conclusion. Thus, the only issue before the court is whether the ALJ properly assessed the opinion of Billy's treating physician.

In general, an ALJ must accord more weight to the medical opinion of an examining source than to that of a nonexamining source. Testamark v. Berryhill, 736 F. App'x. 395, 387 (4th Cir. 2018) (citing 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1) and Brown v. Comm'r of Soc.

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567

Sec. Admin., 873 F.3d 251, 268 (4th Cir. 2017)). Treating sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairments. Id. (citing Woods v. Berryhill, 888 F.3d 686, 695 (2018)). "[T]he ALJ is required to give controlling weight to opinions proffered by a claimant's treating physician so long as the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the claimant's case record." Lewis v. Berryhill, 858 F.3d 858, 867 (4th Cir. 2017) (alterations and internal quotations omitted).[3]

If an ALJ does not give controlling weight to the opinion of a treating source, the ALJ must consider a non-exclusive list of factors to determine the weight to be given all the medical opinions of record, including (1) examining relationship; (2) treatment relationship; (3) supportability of the source's opinion; (4) consistency of the opinion with the record; (5) specialization of the source; and (6) other factors. Testamark, 736 F. App'x at 398; 20 C.F.R. § 404.1527(c). "An ALJ must include 'a narrative discussion describing how the evidence supports' his 'explanation of the varying degrees of weight he gave to differing opinions concerning [the claimant's] conditions and limitations.'" Woods, 888 F.3d at 695 (citing Monroe, 826 F.3d at 190). An ALJ may give greater weight to the opinions of nontreating and nonexamining sources if the decision provides "sufficient indicia of supportability in the form of a high-quality explanation for the opinion and a significant amount of substantiating

[3] The Social Security Administration has amended the treating source rule effective March 27, 2017, for claims filed after that date. Under the new rule, the SSA will consider the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency. 20 C.F.R. § 404.1520c(a), (c)(1)-(2). Because Billy's claim was filed before the effective date of the change, the decision is reviewed under the regulation in effect at that time, 20 C.F.R. § 404.1527.

evidence, particularly medical signs and laboratory findings; consistency between the opinion and the record as a whole; and specialization in the subject matter in the opinion." Id.

In Dowling v. Comm'r of Soc. Sec., 986 F.3d 377, 385 (4th Cir. 2021), and more recently in Shelley C. v. Comm'r of Soc. Sec., No. 21-2042, 2023 WL 2147306 (4th Cir. 2023), the Fourth Circuit has emphasized that when an ALJ does not give controlling weight to the opinion of a treating physician, she must address each of the factors set out in 20 C.F.R. § 404.1527(c). It is not enough to acknowledge the factors; they must be addressed. "Mere acknowledgment of the regulation's existence is insufficient and falls short of the ALJ's duties." Shelley C., 2023 WL 2147306 at *7.

On May 3, 2017, approximately three months before Billy's alleged onset date, Carl Winfield, M.D., one of Billy's treating physicians, completed a physical assessment form. R. 538–39. Dr. Winfield noted that Billy's diagnoses include chronic neuropathic pain, degenerative disc disease, depression, post-laminectomy syndrome, and causalgia of upper limb. He stated that symptoms from Billy's impairments would constantly interfere with the attention and concentration needed to perform simple work-related tasks and that the medications he took caused drowsiness and insomnia. He said that Billy could walk less than one city block without rest or significant pain. In an eight-hour day he could sit for five hours, stand or walk for two hours, and would need to take fifteen-minute breaks less than every hour. He could never lift even ten pounds and was limited in his ability to do repetitive reaching, handling, or fingering. He could use his hands to grasp, turn, and twist objects one percent of the time, use his fingers for fine manipulation less than 5 percent of the time, and use his arms for reaching five percent of the time. Dr. Winfield further opined that Billy would

be absent from work more than four times per month because of his impairments or treatments.

Dr. Winfield believed that, based on his flat affect, depressed mood, irritability, and anxiety, Billy had extreme limitations in his ability to sustain an ordinary routine and regular attendance at work and to work a full day without needing more than the allotted rest periods in a day. He had marked limitations in his ability to adapt to changes and manage psychologically based symptoms. R. 533–35.

In assessing Dr. Winfield's 2017 opinion as to Billy's mental and physical impairments, the ALJ acknowledged that Dr. Winfield had treated Billy for number of years. Regarding Billy's mental impairments, the ALJ said that Dr. Winfield's opinions were not consistent with or supported by the objective evidence of record, including his own treatment notes, which generally noted intact and unremarkable mental status exams, and overall well-controlled psychological symptoms. The ALJ added that the opinion was inconsistent with other providers' treatment notes which revealed normal mental status exams. She found that Dr. Winfield's assessment appeared to be based on Billy's subjective complaints and gave the opinions little weight.

Turning to the physical functional evaluation, the ALJ found that the limitations imposed by Dr. Winfield were inconsistent with the doctor's own notes, which typically showed normal handgrip strength, negative Tinel's and Phalens' signs, and reduced right greater than left strength of 4/5 in the legs on only one occasion in April 17. R. 1008. The ALJ further found that the opinion was inconsistent with other providers' findings, including no grip or strength deficits in the upper extremities, normal strength in the lower extremities,

normal reflexes, negative straight leg raise tests, normal range of motion, and no gait abnormalities. The ALJ gave these opinions little weight.

On May 6, 2021, more than three years after Billy's DLI, Dr. Winfield completed an additional medical source statement. R. 2184–88. He had been treating Billy since 2014 and saw him once a month for a twenty-minute visit. His diagnoses included oropharyngeal cancer-squamous cell carcinoma with lymphatic metastases, post-laminectomy—low back pain, and neuropathic pain. Dr. Winfield said Billy's diagnosis was guarded. He could walk for less than a city block without pain, sit for twenty minutes or stand for five minutes without pain, stand or walk for less than two hours, sit for six hours, would need to shift from standing to sitting at will, would need unscheduled ten-minute breaks throughout the day, and would need to use a cane or other assistive device. Billy could occasionally lift ten pounds or less, rarely lift twenty pounds and never lift fifty pounds. He could occasionally look down, turn his head, and look up, and frequently hold his head in a static position. He could never stoop, bend, crouch, squat, or climb ladders, rarely twist, and occasionally climb stairs. He could frequently use his hands and arms.

Dr. Winfield opined that because of Billy's depression, anxiety, chronic pain syndrome and use of narcotic medication, including opioids, he could not perform the following activities independently, appropriately, effectively, and on a sustained basis in a regular work setting: remember work-like procedures, maintain attendance and punctuality, sustain an ordinary routine without special supervision, work in coordination with or proximity to others, make simple work-related decisions, complete a normal workday or workweek without interruptions from psychologically-based symptoms, perform at a consistent pace, accept

instructions and respond appropriately to supervisors, respond to changes in a routine work setting or deal with normal work stress. He stated that Billy would likely be off task more than twenty percent of the day and that he was likely to have good days and bad days. Dr. Winfield believed it likely that Billy would miss more than four days of work per month. Dr. Winfield indicated that Billy's limitations of functions had existed from at least February 21, 2015, through December 31, 2018, and explained that Billy had experienced chronic pain and used pain medications for more than five years, had been suffering from depression and anxiety, and had metastatic oropharyngeal cancer—squamous cell carcinoma.

The ALJ gave Dr. Winfield's 2021 functional assessment minimal weight because it was rendered more than three years after Billy's DLI, appeared to be based on his recent metastatic oropharyngeal cancer diagnosis, which was well outside the relevant time frame, and did not specify which limitations existed prior to his March 2018 DLI and which were for the period after his DLI. Finally, the ALJ found that Dr. Winfield's opinions were inconsistent with the findings of Billy's other treatment providers for the period through his DLI.

**B. Findings of the Magistrate Judge**

In response to Billy's argument that the ALJ did not properly analyze Dr. Winfield's opinions, the magistrate judge found that in accordance with Dowling, 986 F.3d at 385, the ALJ meaningfully considered each of the factors in § 404.1527(c) before deciding how much weight to give Dr. Winfield's medical opinions. R&R, ECF No. 22 at 16. The ALJ stated that Dr. Winfield was Billy's treating and primary care physician who had treated him for many years, which addressed the categories of "treatment relationship" and "length," as well as Dr. Winfield's "medical specialization."

In addressing "consistency" with evidence from other treatment providers, the ALJ cited to a record of an exam on December 22, 2017, that showed no grip or strength deficits in the upper extremities, normal strength in the lower extremities, no gait abnormalities, normal range of motion in the spine, and negative straight leg tests. She also cited to a series of visits Billy made to another physician where his physical examinations all were within normal limits. In addition, she cited to Dr. Winfield's own notes that showed Billy had no abnormal findings in his hands and reduced leg strength on only one occasion.

Also, although the ALJ gave the opinions of the state agency physicians "partial weight" and adopted their findings that Billy could do light work with additional limitations, she rejected their opinions that Billy had unlimited ability to use his hands and instead restricted him to frequent handling and fingering based on his severe carpal tunnel. In addition, she gave him a sit/stand option to accommodate his chronic lower back and hip pain. The magistrate judge concluded that the ALJ reasonably relied on the overwhelmingly normal examination findings, and especially those of Dr. Winfield, to discount his functional findings on a disability check-box form.

**C. Billy's Objection**

Billy objects to the magistrate judge's conclusion, arguing that the rationales given by the ALJ for not giving Dr. Winfield's opinion greater weight were not sufficient because she did not explain why the few normal findings she cites justify rejecting the opinion. The court finds this argument persuasive. In addition, the court notes other shortcomings in the ALJ opinion that leave the court to guess how the ALJ arrived at her conclusion that Billy can do the "good deal of walking or standing, or … sitting most of the time with some pushing and

pulling of arm or leg controls" required by light work, 20 C.F.R. § 404.1527, or how he can complete an eight-hour workday or forty-hour workweek with sufficient regularity to maintain competitive employment. In conducting its analysis, the court is mindful of the Fourth Circuit's admonishment in Arakas, 983 F.3d 83 at 107, that "the opinion [of a treating physician] must be given controlling weight unless it is based on medically unacceptable clinical or laboratory diagnostic techniques or is contradicted by the other substantial evidence in the record." A finding of "lack of substantial support from other objective evidence of record" is insufficient to give a treating physician's opinion less than great weight. Id.

First, two of the exam results cited by the ALJ, the negative Tinel's and Phalen's signs, address Billy's hand issues and not his ability to stand, walk, or sit.[4] Regarding the third finding, that Billy had reduced leg strength on only one occasion and his lower extremity examinations were otherwise normal, the ALJ did not explain how these findings affect Billy's ability to walk for less than one city block without rest or significant pain, stand or walk for two hours in an eight-hour workday, sit for a maximum of five hours, or his need to take multiple fifteen-minute breaks because of pain.[5] In other words, the ALJ did not "build the logical bridge" from the objective findings to her rejection of the walking and sitting limitations imposed by

[4] Tinel's sign is a tingling or "pins and needles" feeling a person get when a healthcare provider taps skin over a nerve. It is useful in diagnosing carpal tunnel syndrome and cubital tunnel syndrome. https://my.clevelandclinic.org/health/diagnostics/22662-tinels-sign (last viewed March 15, 2023). In a Phalen's test, the wrist is flexed while the person is asked to report whether the symptoms they have reported are precipitated. https://www.carpal-tunnel.net/diagnosing/provocative (last viewed March 15, 2023).

[5] It is well-established that while a claimant must show objective evidence of some condition that would reasonably produce pain, there need not be objective evidence of the pain itself or its intensity. Arakas, 983 F.3d 83 at 95 (citing 20 C.F.R. § 404.1529 and SSR 16-3p, 2016 WL 1119029 (S.S.A. Mar. 16, 2016)). Rather, a claimant is entitled to rely exclusively on subjective evidence to prove his complaints of disabling pain. Hines v. Barnhart, 453 F.3d 559, 564–65 (4th Cir. 2006).

Dr. Winfield. See Monroe, 826 F.3d at 189 (observing that an ALJ "must build an accurate and logical bridge from the evidence to his conclusion") (quoting Clifford, 227 F.3d at 872).

Second, regarding "consistency," generally, the more consistent a medical opinion is with the record as a whole, the more weight an adjudicator is supposed to give to the medical opinion. 20 C.F.R. § 404.1527(c)(4). When the ALJ discussed the consistency of Dr. Winfield's opinion with other evidence in the record, she cited evidence from other providers that Billy had normal strength in his lower extremities, normal reflexes, negative straight leg raise tests, a normal range of motion in his spine, and no gait abnormalities. But, again, these findings do not address Billy's inability to sit for less than five hours, stand or walk for two hours in an eight-hour workday, or his need to take frequent breaks.

Third, when discussing consistency with other evidence in the record, the ALJ did not address the fact that Dr. Winfield's opinion was consistent with that of another treating physician, Leon J. Abram, M.D., who opined on several occasions in 2016 that Billy was unable to work due to pain. R. 452, 466. Dr. Abram began treating Billy for back pain in 2011, performed a laminectomy and fusion surgery in May 2011, and a revision of that surgery in December 2011. R. 453. Billy returned to Dr. Abram in 2015, complaining of residual significant back pain with occasional buttock and leg pain symptoms. R. 458. Dr. Abram continued to treat Billy until Dr. Abram's own death in 2017.

The court recognizes that the ALJ also gave Dr. Abram's opinion little weight, finding that it was given prior to the onset date, Dr. Abram did not provide any rationale for his finding, it was not supported by the longitudinal record with its limited physical findings, and Dr. Abram generally provided routine and conservative treatment to Billy. R. 1006. She also

noted that the opinion was not consistent with or supported by the evidence of record. R. 1006. However, the rationales for discounting the opinions of Drs. Winfield and Abram are puzzling. The ALJ had before her the opinions of two treating physicians who saw Billy for at least five years and who assessed him as having functional limitations that would preclude him from doing light work. Nevertheless, she found both opinions entitled to little weight because they were inconsistent with or unsupported by the record, even though the opinions were consistent with one another.

In addition, another treating physician, pain management specialist Larry Winikur, M.D., diagnosed Billy with chronic pain syndrome and post-laminectomy syndrome and prescribed Oxycodone, 15 mg. five times per day, Naproxen 500 mg. twice per day, Skelaxin 800 mg. three times per day, and Gabapentin, 300 mg. four times per day. While taking these medications, Billy reported in 2017 and 2018 that his pain was a "five" or "seven" on a scale of "one to ten" although he also said the medications were effective or somewhat effective at controlling his pain and allowing him to remain active. Billy reported that his pain was constant in his lumbar region, hips, right leg and foot, and left leg, and that he experienced pain when sitting, standing, walking, with over exertion, and with changes in the weather. R. 959, 965, 971, 976, 983, 988. The ALJ did not mention Dr. Winikur's records when assessing the consistency of Dr. Winfield's opinion with the other evidence in the record.

While it is the province of the ALJ to weigh the evidence and decide the weight given to the opinion of a treating physician, the regulations require her to look at the record as a whole. Three of Billy's treating physicians attempted for years to relieve Billy's severe back pain with various modalities including surgery, narcotic medication, injections, physical

therapy, and a spinal cord stimulator, none of which provided significant, long-term relief.[6] By not acknowledging, much less addressing the consistency of the treating physicians' opinions, the ALJ did not fulfill her duty to consider the record as a whole when she accorded little weight to Dr. Winfield's opinion regarding Billy's ability to sit, stand, and walk.

Finally, the ALJ did not discuss Dr. Winfield's opinion that Billy's ability to work would be affected by drowsiness and insomnia caused by the medication he takes, that Billy would need to take 15-minute breaks in addition to those normally provided in a workplace, or that Billy would miss more than four days of work per month because of symptoms or treatment related to his impairments. R. 538–39. Another treating provider, Richard Bindewald, Jr., PhD, a licensed clinical psychologist who saw Billy four times in 2016, gave his opinion in February 2017 that Billy could not sustain the pace, persistence, or concentration required to maintain gainful employment, and his prognosis was "very unlikely to change, even with medical and psychological treatment." R. 860. Dr. Bindewald had given a similar assessment in October 2016. The ALJ discounted Dr. Bindewald's opinion because he was not providing ongoing treatment, he had last seen Billy prior to his onset date, and there were no objective findings in the record to support his opinion. R. 1006.

[6] The ALJ also described Billy's treatment as "routine and conservative." R. 1005. The court notes that Billy has had three back surgeries, two before his alleged onset date and one five months after his DLI. Billy also received placement of a spinal cord stimulator which did not provide relief. Neither surgery nor spinal cord stimulators are considered "routine and conservative treatment." See Gilliam v. Berryhill, No. 2:17-CV-00603, 2017 WL 3634097, at *9 (S.D.W.V. July 25, 2017) ("The undersigned agrees with Claimant insofar as the trial spinal cord stimulator placement was not a traditional conservative treatment method, as opposed to pain medications and physical therapy[ ]"); Davis v. Berryhill, No. 3:16-CV-126, 2017 WL 3326769 (N.D.W.V. June 1, 2017) (finding history of surgery, spinal cord stimulator, significant physical therapy, injections and strong pain medication could not be considered "conservative treatment."); Wilson v. Colvin, No. 6:16-CV-06509-MAT, 2017 WL 2821560, at *6 (W.D.N.Y. 2017) (describing chiropractic treatment, physical therapy, and epidural injections as "relatively conservative" treatments).

The vocational expert testified that if a person occasionally were unable to complete an eight-hour workday or a forty-hour workweek, he would be unable to sustain competitive employment. R. 1063. "Occasionally" was not defined at the hearing. In Shelley C., 2023 WL 2147306 at *19, the court found it "striking" that the ALJ did not discuss testimony by the vocational expert that no jobs existed for a person who would be off task from their job more than an hour per day in addition to regular breaks. Given the evidence in the record that Shelly C. had waxing and waning symptoms that would hinder her from being a dependable employee, the court found that "[t]he ALJ erred by disregarding the vital testimony and finding that [the plaintiff] had the capacity to work." Id.

In this case, Billy testified at the ALJ hearing about the severe and unrelenting nature of his pain during the relevant time period. He stated that after his first two back surgeries in 2011, he continued to work although he was in tremendous pain but sometimes was able to lie down on the floor which provided him with some relief. R. 104. He would take a mobile TENS unit to work and would use it lying flat on his back in his car at lunch, or while he was working. R. 1056–57. He took narcotic medications for pain, attended physical therapy, and received injections, but nothing gave him relief except for lying on the floor. R. 1041–42, 1044. He testified that between 2015 and 2018 he was unable to work and would do very little besides sit or lie on the couch and watch television. R. 1047. He did not leave the house by himself. He occasionally washed dishes when he was able to stand up long enough to do so. R. 1050. He could do some laundry, which caused pain. R. 1050. He visited friends and went out to eat occasionally. R. 1052. He was in a motor vehicle accident in 2017 which caused him to experience more pain. R. 1053–54. He also has numbness in his feet. R. 1054. In a disability

report completed in January 2017, Billy stated that he could not stand in a straight up position for more than 20 minutes without having to sit or bend forward. R. 242. He said that two of his medications cause sleepiness and drowsiness. R. 248. He spent most of his time lying on the floor or in a recliner trying to get pain relief. R. 249. Considering Billy's testimony and Dr. Bindewald's assessment, albeit unsupported with examination findings, that Billy could not sustain the pace, persistence, or concentration needed to maintain gainful employment, the ALJ erred by not addressing Dr. Winfield's opinion that Billy would need more breaks than normal and that he would miss four days per month caused by his impairments.

In sum, the ALJ's assessment of the degree to which the opinion of Dr. Winfield is or is not supported by substantial evidence is insufficient to allow for meaningful review by the court. Accordingly, the court **SUSTAINS** Billy's objection to the magistrate judge's finding that the ALJ properly assessed the opinion of his treating physician.

Because the court finds that the ALJ's assessment of Dr. Winfield's 2017 medical opinion is not supported by substantial evidence, it does not find it necessary to address her assessment of Dr. Winfield's 2021 opinion regarding Billy's impairments.

**III. Conclusion**

For the reasons stated, the court **SUSTAINS** Billy's objection to the Report and Recommendation, ECF No. 23. The court **DECLINES** to adopt the R&R, ECF No. 22. Billy's motion for summary judgment, ECF No. 17 is **GRANTED**; the Commissioner's motion for summary judgment, ECF No. 20 is **DENIED**. The Commissioner's decision is **VACATED**, and this matter is **REMANDED** to the Commissioner pursuant to sentence

four of 42 U.S.C. § 405(g) for further consideration. This matter is **DISMISSED** and **STRICKEN** from the active docket of the court.

It is so **ORDERED**.

Entered: March 21, 2023

Michael F. Urbanski
Chief United States District Judge